IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00729-WDM-CBS

GLENN SPAGNUOLO,

    Plaintiff,

v.

THE CITY OF LONGMONT, COLORADO;
GORDON PEDROW, in his official and individual capacity;
KAREN RONEY, in her official and individual capacity,
PATTI WEST, in her official and individual capacity; and
JEFF FRIESNER, in his official and individual capacity,

    Defendants.

## ORDER ON PENDING MOTIONS

Miller, J.

    This matter is before me on the following motions: (1) the Motion to Dismiss Plaintiff's Amended Complaint filed by defendants City of Longmont (Longmont), Gordon Pedrow, Karen Roney, Patti West, and Jeff Friesner (collectively, "Defendants); (2) Defendants' Motion to Stay Pending Ruling on Objection to Magistrate Judge's Order; and (3) Defendants' Motion to Strike Plaintiff's Response to Defendants' Objection. I also consider Defendants' Rule 72(a) objection to the order of Magistrate Judge Shaffer denying their motion to stay, which is relevant to my resolution of the motion to stay and the motion to strike. I have considered the parties' written arguments and find that oral argument is not required.

## Background

This civil rights case brought pursuant to 42 U.S.C. §§ 1983 and 1988 concerns claims that Defendants instigated and conducted an unwarranted investigation of plaintiff Glenn Spagnuolo's (Spagnuolo) activities after Spagnuolo exercised his First Amendment free speech rights when he was a guest on a radio talk show in Denver.

The following facts, taken primarily from the motion to dismiss, are generally not disputed for purposes of the motion.

Spagnuolo is employed by Longmont as the Recreation Program Supervisor. The individual defendants are also municipal employees of Longmont: Pedrow is City Manager, Roney is Community Services Director, West is the Human Resources representative, and Friesner is Recreation Manager.

On March 3, 2005, at 4:30 p.m., Spagnuolo called into a talk radio show to discuss the controversy surrounding Ward Churchill, a professor at the University of Colorado. Among his comments on the air were his opinions that when police officers act as oppressors they can become targets of the oppressed, that when violence occurs against police officers it is frequently as result of their own behavior, and that violence may be an appropriate tool in self-defense, even against the government.

On March 4, 2005, a Longmont police detective called Spagnuolo to ask if he were the party speaking on the talk radio show.

On April 1, 2005, Longmont informed Spagnuolo that it was investigating his speech on the radio show. Although West and Roney escorted Spagnuolo from his office, and his office computer, provided by the City, was searched, he was told later

that day that he was not suspended and could return to work while the investigation was ongoing.

On April 15, Defendants notified Spagnuolo that he was required to attend an investigative meeting and could not be accompanied by his attorney. Spagnuolo met with West on April 18. Although the content of the meeting is not entirely clear, it appears that West informed him that Defendants were investigating whether he was on the job when he made the phone call to the radio show or used his City cell phone to make the call. Spagnuolo declined to answer any questions, wanting to review them first with his attorney.

On April 20, Spagnuolo was notified of a meeting on April 21 and informed that his failure to appear and answer questions could result in his termination.

Spagnuolo initiated this lawsuit on April 21, 2005, filing his complaint along with a motion for a temporary restraining order (TRO). The motion for TRO, heard by Judge Figa of this Court, was denied.

At the completion of Longmont's investigation of Spagnuolo's conduct, the Defendants presented Spagnuolo with a Performance Development Plan. The Plan cited Spagnuolo for, *inter alia*, inappropriate use of City resources for personal use during the work day and required him to adhere to established regulations relating to the use of such resources and to meet with his supervisor for weekly progress reviews.

Spagnuolo's complaint asserts a single claim alleging that Defendants retaliated against him for exercising his First Amendment right to freedom of speech and that Defendants' retaliatory actions had a chilling effect on his exercise of that right.

Defendants move for dismissal of Spagnuolo's complaint, asserting that the complaint fails to state a claim and that they are entitled to qualified immunity.

### Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is appropriate when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

When defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, "the plaintiff must carry the burden of establishing that the defendant[s] violated clearly established law." *Lybrook v. Members of the Farmington Municipal Schools Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000). To meet this burden, Spagnuolo must "identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant[s'] conduct violated that right." *Id.* (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1291 (10th Cir. 1997)).

### Discussion

The parties disagree about the proper elements to be applied to Spagnuolo's claim. This may be the result of Spagnuolo's apparent misreading of two cases: *Lybrook v. Members of the Farmington Municipal Schools Bd. of Educ.*, 232 F.3d at 1334, and *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000). First, in his response to the motion to dismiss, Spagnuolo interprets Defendants' reliance on *Lybrook* as

4

improperly inserting an "adverse employment action" requirement from Title VII employment cases. To the contrary, *Lybrook* is a First Amendment case. Second, Spagnuolo does not distinguish between different standards of review established in *Worrell* for claims against public employers (and defendants in a contractual relationship with the plaintiff) and claims against nonemployer defendants. Properly interpreted, both cases support Defendants' arguments that the Amended Complaint should be dismissed and/or that they are entitled to qualified immunity on Spagnuolo's claims.

"A government employer may not, as a condition of employment, compel an employee to relinquish *carte blanche* his First Amendment right to comment on matters of public concern." *Maestas v. Segura*, 416 F.3d 1182, 1187 (10th Cir. 2005). *See also Lybrook*, 232 F.3d at 1338 ("A government employer cannot 'condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression'") (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)); *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998) ("a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech").

Where the defendant in a First Amendment speech claim is a public employer, the claim must be analyzed under the four-step process set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968). *Dill*, 155 F.3d at 1201. Thus, to determine whether Spagnuolo has stated a First Amendment retaliation claim, I must determine whether his speech involved a matter of public concern. If so, I must then balance Spagnuolo's

5

interest in commenting upon matters of public concern "against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (citation omitted). If this balancing test weighs in Spagnuolo's favor, he must then show that his speech was a "substantial factor or a motivating factor in the detrimental employment decision." *Id.* at 1201-02 (citation omitted). If all three elements weigh in favor of Spagnuolo, Defendants may yet avoid liability if they can demonstrate they would have taken the same actions even in the absence of the protected speech. *Id.* at 1202.

Although the Tenth Circuit in *Lybrook* did not clearly indicate where it found the requirement of an adverse employment action in the *Pickering* test, other decisions from the circuit make clear that this element must be established as part of the third factor (causation). *Maestas*, 416 F.3d at 1188 n. 5 ("The employee also bears the burden under the third factor of establishing an adverse employment action") (citing *Vanderhurst v. Colorado Mountain College Dist.*, 208 F.3d 908, 914 n. 1 (10th Cir. 2000)). Accordingly, I disagree with Spagnuolo that the requirement of an adverse employment action is limited to Title VII cases.

I also disagree with Spagnuolo that an investigation by a public employer violates the First Amendment when instigated in bad faith in retaliation for an employee's exercise of freedom of speech. Spagnuolo's authority for this argument is *Worrell*. *Worrell*, however, concerned claims against both a public employer defendant and nonemployer defendants. The Tenth Circuit expressly held that the proper framework for weighing claims against a nonemployer defendant is not the *Pickering*

6

balancing test but rather proof of three elements: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions cause the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the defendant's adverse action was substantially motivated as a response to the protected activity.  *Worrell*, 219 F.3d at 1212, 1213 (citation omitted).  It was in the context of the claims against the nonemployer defendants that the Tenth Circuit recognized bad faith investigation as a form of official retaliation that would infringe a plaintiff's First Amendment rights.  *Id.* at 1212.

Although Tenth Circuit does not require termination or its equivalent to find an adverse employment action for purposes of a First Amendment retaliation claim, it has not, to my knowledge, found that an investigation by a public employer is an actionable retaliation for exercise of First Amendment rights.  Indeed, in *Maestas*, the court expressly found that it had not gone beyond recognizing "that retaliation involving 'promotion, transfer, recall after layoff, and hiring decisions' may be actionable under the First Amendment[.]" 416 F.3d at 1188 n. 5.

In *Lybrook*, a case with facts similar to those before me, the plaintiff, a public school teacher, alleged that the school officials retaliated against her for exercising her right to freedom of speech by acting on behalf of other teachers with complaints against the school district and by agreeing to testify on behalf of another teacher in an action against the school.  232 F.3d at 1336.  The plaintiff alleged that the school officials retaliated against her by issuing a professional development plan requiring her to work with her colleagues and to strive for high standards of professional commitment; the

plaintiff resigned her position, allegedly because of perceived retaliation and harassment. *Id.* at 1337. The Tenth Circuit decided that these actions were not sufficiently adverse for purposes of establishing a First Amendment retaliation claim. *Id.* at 1338-39.

Defendants do not address all four *Pickering* factors in their motion to dismiss. Rather, following *Lybrook*'s lead, they focus on adverse employment action as a prerequisite (rather than an element of the third step of the analysis). Assuming, for purposes of this order only, that Spagnuolo can establish the first two *Pickering* factors, I must agree with Defendants that, under Tenth Circuit law, he has not shown an adverse employment action necessary for proof of the third factor. Adverse employment action may well eventuate that may be linked to Spagnuolo's speech, but that has not yet occurred. As a result, I conclude the Amended Complaint fails to state a claim and must be dismissed pursuant to Rule 12(b)(6).

Alternatively, I agree that, even if the Amended Complaint states a valid claim for relief, Defendants are entitled to qualified immunity because, at the time of their actions, there was no clearly established law providing that investigation and imposition of a performance development plan constitute adverse employment actions for purposes of a First Amendment retaliation claim. As the Tenth Circuit stated in *Maestas*:

> In *Schuler v. City of Boulder*, 189 F.3d 1304, 1309 (10th Cir. 1999), we recognized that retaliation involving "promotion, transfer, recall after layoff, and hiring decisions" may be actionable under the First Amendment "although not amounting to termination of employment or the substantial equivalent of dismissal." *That is as far as we have gone.*

8

> Unlike the Seventh Circuit, we have never held employment action which may tend to chill free speech is necessarily adverse. . . . [W]e continue to leave that question for another day.

416 F.3d at 1188. This language expressly demonstrates that there was no clearly established law from the Supreme Court or the Tenth Circuit at the time of Defendants' actions. Further, Spagnuolo has not pointed me to any clearly established weight of authority from other courts showing that investigation and/or a performance plan is an adverse employment action within the proper standard for public employers. Therefore, Defendants would also be entitled to qualified immunity on the claim asserted in the Amended Complaint.[1]

Because I conclude the motion to dismiss should be granted, I need not reach the parties' arguments in the motion to stay and the filings related to it.

Accordingly, it is ordered:

1. The motion to dismiss the amended complaint, filed August 11, 2005 (Docket No. 38), is granted.

2. The motion to stay pending ruling, filed September 1, 2005 (Docket No. 53), is denied as moot.

---

[1] To the extent the Amended Complaint could be read to allege separate claims for retaliation and chilling, I note that the parties focus on retaliation in their written arguments on the motion to dismiss. Further, I observe that Spagnuolo has not pointed to any Tenth Circuit or Supreme Court law clearly establishing a chilling claim separate and apart from a public employee retaliation claim. *Cf. Ridpath v. Bd. of Governors Marshall University*, 447 F.3d 292, 319 (4th Cir. 2006) ("A chilling claim is essentially the derivative of a retaliation claim: if a public employer cannot fire, demote, or similarly punish a public employee for engaging in protected speech, the employer also cannot intimidate the employee into silence by threatening impermissible retribution").

3.   The motion to strike response, filed October 5, 2005 (Docket No. 69), is denied as moot.

4.   Defendants' Rule 72 objection, filed September 7, 2005 (Docket No. 55), is overruled as moot.

DATED at Denver, Colorado, on September 6, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge